THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWIN F. O'FARRELL, Plaintiff in Error.

*Opinion filed October 28, 1910—Rehearing denied Dec. 8, 1910.*

1. INDICTMENT—*when a motion to quash is properly overruled.* Where each count of an indictment charges, in the language of the statute relating to larceny by embezzlement, that defendant was the agent of a certain named person and as such agent collected and embezzled the funds of such person in a specified amount, the indictment is sufficient and a motion to quash is properly overruled.

2. CRIMINAL LAW—*when overruling motion for bill of particulars is not error.* The overruling of a motion to require the State's attorney to file a bill of particulars is not an abuse of the trial court's discretion in that respect, where the several counts of the indictment are sufficiently specific to advise the defendant of the charge he is required to meet.

3. SAME—*court may permit other attorneys to assist the State's attorney.* It is not error for the trial court, upon motion of the

State's attorney, to allow other regularly licensed attorneys to assist in trying the defendant, who is represented by able counsel.

4. SAME—*when objection that the defendant was required to prematurely exhaust peremptory challenges is not preserved.* Alleged error in requiring the defendant to prematurely exhaust his peremptory challenges by the improper overruling of challenges for cause is not preserved for review where the defendant did not disclose to the court the name of the juror he desired to challenge and there was no ruling of the court asked or made on the subject, but only a statement of counsel, after the panel was full, that he desired to exercise another peremptory challenge but had been forced by the court to exercise them all.

5. SAME—*larceny by embezzlement—right of an agent to retain commissions.* Unless the terms of the contract creating an agency for collecting money authorize the agent to retain his commissions from the money collected, there is no such joint ownership of the money as precludes his conviction for larceny by embezzlement in case he converts the funds to his own use. (*McElroy* v. *People,* 202 Ill. 473, distinguished.)

VICKERS, C. J., dissenting.

WRIT OF ERROR to the City Court of Pana; the Hon. JOHN McNUTT, JR., Judge, presiding.

At the February term, 1909, of the Pana city court the plaintiff in error was indicted for the crime of larceny by embezzlement. After a motion to quash had been overruled a plea of not guilty was entered, and upon a trial before a jury he was found guilty and sentenced to the penitentiary for an indeterminate period, and he has sued out this writ of error to reverse said judgment.

The statute upon which the indictment was based reads as follows: "If any officer, agent, clerk, or servant of any incorporated company; or if a clerk, agent, servant or apprentice of any person or co-partnership, or society, embezzles or fraudulently converts to his own use, or takes and secretes with intent so to do, without the consent of his company, employer or master, any property of such company, employer, master, or another, which has come to his possession, or is under his care by virtue of such of-

fice or employment, he shall be deemed guilty of larceny."
(Hurd's Stat. 1909, sec. 75, p. 766.)

The evidence shows that in the year 1904 the plaintiff
in error was an attorney at law engaged in practicing his
profession and in the real estate, loan and insurance busi-
ness in the city of Pana; that at that time one Malinda
Vickerage, a widow about fifty years of age, resided in the
city of Pana; that she owned a farm of about one hundred
acres situated near Assumption, which was free from en-
cumbrance and was of the value of from $125 to $150
per acre; that she had received title to said land from her
father; that she was engaged in litigation over a promis-
sory note for $2000, claimed to have been executed by
her, with the administrator of a deceased brother, Thomas
Scott; that she had a son about twenty-three years of age
who had recently been admitted to the bar and who was
a partner of the plaintiff in error in the law, real estate,
loan and insurance business at Pana; that in 1904 plain-
tiff in error called upon Malinda Vickerage in company
with her son, and it was agreed that Malinda Vickerage
would exchange her farm for a hotel property in the city
of Pana known as the Flint Hotel, which hotel was then
encumbered by a mortgage for $7000 and which was then
renting for $125 per month and which the plaintiff in er-
ror then had for sale or exchange; that the trade of the
farm for the Flint Hotel was effected by Malinda Vicker-
age through the plaintiff in error, said Malinda Vickerage
receiving for her farm the hotel, subject to the encumbrance
of $7000, and a mortgage on the farm of $1100; that the
title to the hotel was taken in the name of George D. Cha-
fee, and Chafee executed and delivered a quit-claim deed
to the hotel property to Malinda Vickerage, which quit-
claim deed, by an arrangement between the plaintiff in
error and Malinda Vickerage and her son, was not to be
recorded, the object of said conveyance to Chafee and the
withholding of said quit-claim deed from recording being

said by the plaintiff in error to have been conceived by the
parties with a view to defeat the claim of the administrator
of Thomas Scott against Malinda Vickerage; that the firm
of O'Farrell & Vickerage took charge of the hotel, and for
about a year the rent of the hotel was handled by Vicker-
age, after which time, and until the hotel was disposed of,
the rents therefrom were paid to the plaintiff in error by
the tenants in possession of the hotel; that about one year
after the hotel was deeded to Chafee the $7000 mortgage
thereon fell due and Chafee refused to execute a new note
and mortgage thereon; that thereupon, with the consent
of Chafee, Malinda Vickerage, Richard P. Vickerage and
plaintiff in error, the quit-claim deed from Chafee to Ma-
linda Vickerage was destroyed and Chafee and wife con-
veyed the hotel property to the plaintiff in error, and he
executed a quit-claim deed to Malinda Vickerage for the
hotel property, which she was not to record; that there-
after, for about one year and a half, the plaintiff in error
handled the hotel property, made improvements thereon and
collected the rent therefrom and negotiated a new loan
thereon for $7000, with which he paid off the $7000 mort-
gage thereon at the time the title to the hotel was placed
in Chafee; that in order to effect said new loan to take up
said mortgage it was necessary that the tenants of the hotel
should agree to sell at the hotel bar beer manufactured by
the Reisch Brewing Company, which $7000 note was guar-
anteed by Mr. Reisch, and that the plaintiff in error should
agree to pay $25 per day for each day such beer was not
sold at the bar of said hotel; that soon after the second
$7000 mortgage was placed upon the hotel property Rich-
ard P. Vickerage and the plaintiff in error dissolved part-
nership and Vickerage moved away from Pana; that the
interest and taxes were not paid upon said mortgage and
upon said hotel property, and the plaintiff in error became
involved in litigation over mechanics' liens upon the hotel
property and over the contract providing for the sale of

Reisch Brewing Company beer at the hotel bar; that thereafter the plaintiff in error and Malinda Vickerage entered into the following contract in writing:

"Articles of agreement entered into this 19th day of August, A. D. 1907, by and between E. F. O'Farrell, party of the first part, and Malinda Vickerage, party of the second part:

"*Witnesseth*, that whereas the said first party now holds title to lots 18, 19, 20 (except eight feet off the west side of lot 20) in Pease's addition to the city of Pana, Illinois, and it being the desire of the parties hereto that the said property be exchanged for other property or sold; and whereas, also, there is now an indebtedness against said property and certain liability of the said first party on a certain contract entered into with George Reisch with regard to said property, and it being the desire of the parties hereto to protect the first party hereto as to said indebtedness and contract; it is therefore agreed by and between the parties hereto that the said first party shall have complete control of said property, and shall have full power to change the encumbrance on the same as shall by circumstances be required for the purpose of the protection, as above mentioned, and to trade or sell the said property to the best advantage the circumstances and his judgment shall permit, and when so disposed of, the proceeds of such disposition shall be conveyed, by proper articles of conveyance, by the said first party hereto to the said second party hereto; and the said first party agrees to use his best judgment and efforts in the manner of settling indebtedness, liability and contracts, trade or sale of said property to procure the greatest value his judgment will permit for the said second party hereto.

"In witness whereof the parties hereto have set their hands and seals the day and year first above written.

E. F. O'FARRELL,          (Seal)
MALINDA VICKERAGE.     (Seal)"

—that soon thereafter the plaintiff in error traded the Flint Hotel property to one Colgrove for a hundred-acre farm, Colgrove agreeing to pay all liens and encumbrances upon said hotel property, to give said farm free and clear of all encumbrances and $1250 in cash, and to loan the plaintiff in error $2000, secured by mortgage upon said farm; that plaintiff in error deeded said hotel property to Colgrove and a Mrs. Long, and Colgrove deeded said farm to the plaintiff in error and paid plaintiff in error $1250 in cash and loaned plaintiff in error $2000, secured by a mortgage

upon said farm; that plaintiff in error conveyed said farm to Malinda Vickerage subject to said $2000 mortgage but retained said $1250 and said $2000; that subsequently Malinda Vickerage called upon the plaintiff in error to account for the rents he had collected upon the Flint Hotel and for the $3250 he had received from Colgrove, which several amounts he refused to account to her for, claiming he had used all of said rents and the money received from Colgrove to pay his fees and commissions, in making repairs on the Flint Hotel and in paying taxes and interest upon the mortgages and said hotel property, with the exception of $350 which he claimed to have paid Malinda Vickerage and $200 which he claimed to have paid to Richard P. Vickerage with the knowledge and consent of Malinda Vickerage, in full settlement of all claims which she had against him.

CHAFEE & CHEW, and W. B. McBRIDE, for plaintiff in error.

W. H. STEAD, Attorney General, and ARTHUR YOCKEY, State's Attorney, (JOHN E. HOGAN, E. E. DOWELL, and B. H. TAYLOR, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first claimed that the court erred in overruling a motion to quash the indictment. The indictment contained seven counts. The fourth count was nollied and the other counts were each in the language of the statute, and charged that the plaintiff in error was the agent of Malinda Vickerage, and as such agent collected and embezzled the funds of Malinda Vickerage to the amount of $7000. The indictment was sufficient and the court did not err in overruling the motion to quash. *Lycan* v. *People*, 107 Ill. 423; *Ker* v. *People*, 110 id. 627; *McElroy* v. *People*, 202 id. 473.

It is also urged that the court erred in declining to require the prosecutor to furnish the plaintiff in error a bill

of particulars. Whether or not the State's attorney should have been ruled to furnish the plaintiff in error a bill of particulars was a matter which rested in the sound legal discretion of the trial court. The several counts of the indictment were sufficiently specific to advise the plaintiff in error of the charges he was required to meet, and we think the court did not err in overruling his motion for a bill of particulars. *Morton* v. *People,* 47 Ill. 468; *DuBois* v. *People,* 200 id. 157; *Gallagher* v. *People,* 211 id. 158; *People* v. *Weil,* 243 id. 208.

It is next urged that the trial court erred in permitting John E. Hogan and E. E. Dowell, two regularly licensed attorneys, to assist the State's attorney in the prosecution of this case. These attorneys were permitted by the court to assist in the trial of the case upon the motion of the State's attorney. The plaintiff in error was represented upon the trial by able counsel, and we are unable to see, from anything that appears in this record, that the trial court abused the discretion reposed in it in permitting Mr. Hogan and Mr. Dowell to assist the State's attorney in the prosecution of the case. *Hayner* v. *People,* 213 Ill. 142.

It is further urged that the court erred in requiring the plaintiff in error to exercise two of his peremptory challenges by overruling his challenges for cause to Louis Bowersock and J. J. Higginbottom, who were called as jurors. The record shows that when said jurors were called they were severally examined by counsel for plaintiff in error and each was challenged for cause, and upon the challenge for cause to each being overruled they were excused upon the peremptory challenge of the plaintiff in error; that the panel was then filled by other jurors who were apparently satisfactory to both sides; that thereupon the counsel for plaintiff in error stated to the court that he desired to peremptorily challenge another juror, but that he had been prevented by the court from so doing by being forced to exercise all his peremptory challenges. The juror which

the plaintiff in error desired to challenge was not designated and the court made no ruling nor was it asked to make a ruling, but after the statement of counsel above referred to was made and taken down by the official reporter the jury was sworn and the case proceeded. It does not appear that the plaintiff in error was required to be tried by an unfair or prejudiced juror, and the point that the plaintiff in error was required to prematurely exhaust his peremptory challenges is not properly preserved for review in this court upon this record.

It is further urged by the plaintiff in error that the jury were improperly instructed as to the law upon behalf of the People, and that instructions offered on his behalf were improperly refused or improperly modified before they were given to the jury. We have examined all of the instructions which were given, modified before they were given, and refused, and when the given instructions are considered as a series we think the jury were fairly instructed as to the law of the case.

It is finally contended that the verdict is not supported by the evidence and is contrary to the law, and for these reasons the court erred in declining to instruct the jury, at the close of all the evidence, to find the plaintiff in error not guilty. In support of this contention it is urged that the evidence shows that the plaintiff in error had an interest in the funds collected from the rent of the Flint Hotel to the extent of his commissions, and that he had an interest in the amount collected from Colgrove to the extent of the balance due him for fees and disbursements in representing Malinda Vickerage in the exchange of the Flint Hotel for the Colgrove farm, and in other services performed by him for Malinda Vickerage, and that the law in this State is well settled in *McElroy* v. *People, supra,* that under the statute of this State making it larceny by embezzlement for an agent to fraudulently convert to his own use funds which he has received as such agent, a defend-

ant cannot be rightfully convicted of embezzlement and fraudulently converting to his own use a. fund in which he has an interest although such fund came into his hands as agent. The court instructed the jury, upon· behalf of the plaintiff in error, that if they believed, from the evidence, that the plaintiff in error was a part owner of any of the funds which he was charged with embezzling or fraudulently converting to his own use, he could not properly be ' convicted of embezzling or fraudulently converting to his own use such funds. Nevertheless, the jury convicted the plaintiff in error. The evidence shows that Malinda Vickerage agreed to pay the plaintiff in error a commission upon the rent he collected upon the Flint Hotel, and that he should have the right to retain his commissions out of the rents collected by him. Under the authority of *McElroy* v. *People, supra,* we are of the opinion the plaintiff in error had such an interest in said rent that he could not lawfully be convicted of embezzling the rent, and the jury, under the instructions of the court, doubtless found that the plaintiff in error was not guilty of embezzling or fraudulently converting to his own use such rent. We think, however, from the evidence, that the plaintiff in error had no interest in the funds received from Colgrove at the time of the exchange of the Flint Hotel for the Colgrove farm. The contract in writing hereinbefore set out in this opinion provides that the plaintiff in error should dispose of the hotel property as best he could, and "when so disposed of, the proceeds of such disposition" should be paid over to Malinda Vickerage. While it may be that the plaintiff in error would be entitled to compensation for disposing of the Flint Hotel to Colgrove and for the other services performed by him for Malinda Vickerage, the evidence wholly fails to show that the plaintiff in error had the right to deduct such compensation from the money received from Colgrove, but, on the contrary, the evidence shows that he expressly agreed to turn over to Malinda Vickerage the

proceeds arising from the sale of the Flint Hotel, without deductions. In the *McElroy case* the plaintiff in error had the right to deduct her commissions from the amount collected by her by express agreement,—that is, she was only required to account to her employer for the amount remaining in her hands after she had deducted her commissions. She therefore had, as was held by the court, an interest in the funds in her hands which she had collected. That case, therefore, differs from the case at bar.

It has been held by a number of courts,—and we believe that to be the sound rule,—that the right to commissions or fees does not constitute a joint ownership in the fund collected unless the terms of the contract which creates the agency expressly provide that the agent collecting the fund has the right to retain from the particular fund his commissions or fees. (*Commonwealth* v. *Jacobs*, 126 Ky. 536; 15 Am. & Eng. Ann. Cas. 1226; also 13 L. R. A. [N. S.] 511, and cases cited.) In this case the plaintiff in error, by virtue of the agency which was created by the written contract of August 19, 1907, conveyed to Colgrove the Flint Hotel property and received $3250 in cash from Colgrove, which he agreed, by the terms of said contract, to turn over to Malinda Vickerage. This he failed to do and fraudulently converted the same to his own use. This transaction was clearly a violation of the statute, and the plaintiff in error was properly found guilty by the jury of embezzling and fraudulently converting to his own use the funds which he received from Colgrove, as the agent of Malinda Vickerage.

The plaintiff in error has raised and urged in his brief other grounds of reversal, but we think them without force.

The judgment of the city court of Pana will therefore be affirmed.                                                   *Judgment affirmed.*

Mr. CHIEF JUSTICE VICKERS, dissenting.